STEELMAN, Judge.
S.F. (victim or child) was three years old when her mother (mother) began living with defendant (who is not the child's father). Defendant and mother smoked marijuana and used cocaine on a regular basis. In November of 2002 they were living with defendant's mother because neither of them were employed. Defendant and mother shared a bed, and the victim slept in a child's bed in the same room.
One evening, about the sixteenth of November, 2002, defendant and mother went to bed after using marijuana and cocaine. The victim was already asleep in her bed. At trial, mother testified that she awoke to see defendant standing at the foot of the victim's bed. She saw defendant remove the victim's clothes, remove his clothes, apply lotion to her and himself, and briefly insert his penis into the child's vagina. Defendant left the room, returned, re-dressed and returned to bed. Mother went back to sleep without saying anything, because she feared defendant.
The victim eventually told what had happened to her to four different people. The victim moved in with her maternal grandmother (grandmother), because her mother and defendant had no stable housing. Grandmother testified that though the victim had been a happy-go-lucky child before, when she came to live with her after 16 November 2002 she clung to the grandmother and did not eat or sleep well. The victim complained of pain in her vaginal area, which was red, and stated she was having difficulty urinating.
In December of 2002, grandmother took the child to a pediatrician, who informed grandmother that the child had gonorrhea. Grandmother did not know who had given the victim gonorrhea, but on 25 January 2003 the child told her that she had a secret. She climbed onto grandmother's lap, crying, and told her that her mother had held her down while defendant inserted a "black needle with white medicine" into her vagina. The victim then stated that her mother and defendant took her into the bathroom and cleaned her up, that her vagina hurt and bled a little, and that they told her what had happened was a big secret and that she would have her toys taken away and be punished if she told anyone.
A friend (Lisa) was living with grandmother on 25 January 2003 when the victim told grandmother what had happened to her, and she heard the conversation. Her account of what the victim said that night was consistent with that of the grandmother.
Wendy Meadows (Meadows) was a counselor working for Kids First child advocacy center in December 2002 when the victim was referred to her by Department of Social Services. She testified that the victim told her in their second session: "They gave me candy and told me not to tell." In their third session, the victim told Meadows that, while holding her legs, defendant put a black needle with white medicine in her vagina, while her mother held her down by the neck. Meadows had two sets of anatomical dolls, one a white family and one a black family. Meadows asked the victim to show her what had happened using the dolls. The victim chose a girl doll and laid it on the table, saying the doll was lying on a bed, she then chose an adult female doll, indicated that it was her mother, and used the hands of that doll to press down on the neck of the girl doll. She then chose a black doll, and indicated it was defendant. She first had the male doll touch the girl doll in the area of its vagina, then she told Meadows that defendant put a needle in her. When asked to show how defendant did this, the child "took the black adult male doll and laid it on top of the girl doll that was lying on the table." Finally, the victim told Meadows that "it hurt, and I cried."
The victim was referred to another counselor, Kelly Roberts (Roberts). According to Roberts' testimony, on their sixth session, the victim told Roberts the same story she had told the other women: her mother held her down by the neck and arms, while defendant first touched her vagina then inserted a black needle with white medicine into her. After her first revelation to Roberts, the victim repeatedly said, "Mother and defendant hurt me." The victim repeated this story multiple times in following sessions, and her story remained consistent. The victim also drew pictures depicting the events she had described.
The State called the victim at trial, but the child was unable to respond in any meaningful manner to questions posed to her. The trial court determined that she was unavailable as a witness, and defendant does not contest this ruling.
Dare County Department of Social Services became involved in the matter in December of 2002, after it was informed that the child had gonorrhea. Department of Social Services arranged for both defendant and mother to be tested for gonorrhea, but neither kept the appointments. Mother was never tested for gonorrhea. Pursuant to a court order, defendant was tested on 15 March 2004 (approximately sixteen months after the event in question), and the results were negative for gonorrhea. Dr. Lisa M. Johnson testified that if a person had been successfully treated for gonorrhea, any later test would be negative.
Defendant was charged with first-degree rape of a child, first-degree sex offense, and taking indecent liberties with a child. He was tried before a jury commencing 21 June 2004, and was found guilty on all charges on 23 June 2004. Defendant was sentenced to a presumptive range active sentence of 336 to 413 months imprisonment. From this judgment defendant appeals. In defendant's first argument, he contends the trial court committed prejudicial error by admitting hearsay statements of the victim. We disagree.
Defendant objected on the grounds of hearsay to the testimony of four witnesses who related the victim's statements: the victim's grandmother; the grandmothers's friend, Lisa; and the two counselors, Meadows and Roberts.
First, defendant argues that hearsay statements of the victim, as testified to by grandmother and Lisa, were improperly admitted because they lacked the "guarantees of reliability or trustworthiness" required by Rule 804(b)(5) of the North Carolina Rules of Evidence. "To be admissible under Rule 804(b)(5), the trial court must determine that the declarant is unavailable, and the statement must meet a six-step analysis:" State v. Isenberg, 148 N.C. App. 29, 35, 557 S.E.2d 568, 572-73 (2001).
(1) Whether the proponent of the hearsay provided proper notice to the adverse party of his intent to offer it and of its particulars; (2) That the statement is not covered by any of the exceptions listed in Rule 804(b)(1)-(4); (3) That the statement possesses "equivalent circumstantial guarantees of trustworthiness"; (4) That the proffered statement is offered as evidence of a material fact; (5) Whether the hearsay is "more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable means"; and (6) Whether "the general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence."
Id. Defendant does not contest the trial courts finding that the victim was unavailable for Rule 804(b)(5) purposes. Defendant limits his argument on appeal to his contention that the statements lacked "equivalent circumstantial guarantees of trustworthiness." In order to make a showing of the requisite trustworthiness, there must be: "(1) assurances of the declarant's personal knowledge of the underlying events, (2) the declarant's motivation to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) the practical availability of the declarant at trial for meaningful cross-examination." Id. at 36, 557 S.E.2d at 573.
The record in the instant case reveals that the victim was personally present at the events she described to her grandmother and Lisa; there is no evidence suggesting any motive for the victim to falsify her statements; there is no evidence that the victim ever recanted her statements; and it is apparent from her inability to testify at trial that the victim was unavailable for meaningful cross-examination. These facts are sufficient to establish the necessary "equivalent circumstantial guarantees of trustworthiness." Id.
Defendant further argues that the trial court violated his right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution by improperly considering extraneous evidence in making a determination of trustworthiness. Idaho v. Wright, 497 U.S. 805, 822, 111 L. Ed. 2d 638, 657 (1990). At trial, the trial court stated that it considered the fact that the victim contracted gonorrhea, and also considered the partially corroborative testimony of the victim's mother, in making its determination that the victim's hearsay testimony to grandmother and Lisa was trustworthy.
Because defendant did not raise this constitutional argument at trial, he now contends that the error amounts to plain error.
The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant.
State v. Cummings, 352 N.C. 600, 636, 536 S.E.2d 36, 60-61 (2000). Having determined that adequate evidence of the trustworthiness of the victim's hearsay statements to grandmother and Lisa was presented at trial, we further hold that any error in considering the statement of the victim's mother, or the victim's gonorrhea, does not rise to the level of plain error.See State v. Tyler, 346 N.C. 187, 202-03, 485 S.E.2d 599, 607 (1997) (where hearsay statement was properly admitted under Rule 804(b)(5), fact that trial court also considered improper corroborating evidence in making its determination held harmless beyond a reasonable doubt).
Defendant next argues that the trial court erred in admitting the victim's hearsay statements to Meadows and Roberts because their admission violated his Sixth Amendment right to confrontation as recently addressed in Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). "The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' This constitutional guarantee applies to both federal and state prosecutions."State v. Sutton, __ N.C. App. __, __, 609 S.E.2d 270, 274 (2005) (citations omitted). "Following Crawford, the determinative question with respect to confrontation analysis is whether the challenged hearsay statement is testimonial." State v. Lewis, __ N.C. __, __, __ S.E.2d __, __, 2005 N.C. LEXIS 1000, 27 (7 October 2005). "The United States Supreme Court determined in Crawford that 'at a minimum' the term testimonial applies to 'prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.'" Id. at 29-30.
Our Supreme Court has also recognized in Crawford an additional prong necessary to show that a statement is testimonial. This "additional prong of the analysis for determining whether a statement is 'testimonial' is, considering the surrounding circumstances, whether a reasonable person in the declarant's position would know or should have known his or her statements would be used at a subsequent trial. This determination is to be measured by an objective, not subjective, standard." Id. at 42.
In the instant case, defendant argues that the victim's statements to the counselors were testimonial, because they werede facto police interrogations. We do not reach this argument. We hold, considering the surrounding circumstances, that a reasonable child in the victim's position would have no reason to know or believe her statements would be used in a subsequent trial. The victim was referred to Meadows, then a counselor at a private, non-profit child counseling center, by Department of Social Services social worker Angela Beasley. Meadows testified that in her sessions the child is never encouraged to disclose abuse, but is given the opportunity to do so in an environment where she feels secure enough to speak freely. Meadows testified that not all children disclose any abuse. There is no evidence in the record that Meadows ever discussed the potential for any criminal consequences for defendant. There is no evidence that Meadows ever discussed with the victim any potential punishment for the defendant.
Roberts is a therapist in Dare County. The victim was referred to Roberts for follow up counseling after her sessions with Meadows, and at the time of trial had participated in approximately forty sessions with Roberts. Roberts testified that she assured the victim that their conversations were confidential, and that Roberts could not disclose their conversations to anyone. There is no evidence in the record that the victim was made aware in any way that her statements could be used against defendant for prosecution, or that Roberts ever discussed any potential consequences to defendant. In fact, review of the entire record reveals no evidence that the victim was ever made to understand by anyone that defendant could face criminal trial and punishment as a result of what he had done to her.
The victim was three or four years old when she made her first statements to Meadows and Roberts implicating defendant (the record does not include the child's date of birth, but she was five at the time of the trial, and first spoke with Meadows and Roberts some fourteen months previously). It is "highly implausible" that a three or four year old would have reason to know, nor even understand, that her statements might be used in a later trial. See State v. Brigman, __ N.C. App. __, __, 615 S.E.2d 21, 25-26 (2005). In light of the fact that the young victim in the instant case was speaking with therapists, not police officers, and that the record is devoid of any evidence that she had the slightest inkling that defendant faced criminal charges, or even that she understood what criminal charges were, we hold that her statements to Meadows and Roberts were not testimonial for Confrontation Clause purposes. See Id. A reasonable three or four year old in the victim's situation would not have had any reason to know that her statements would be used at a subsequent trial. This argument is without merit.
In defendant's second argument, he contends that he is entitled to a new trial because of two alleged "outbursts" by the trial court that he asserts "denigrated counsel and deprived the defendant of his right to trial before a fair and impartial tribunal." We have thoroughly reviewed the record and find this argument to be completely without merit.
Because defendant has not argued his other assignments of error in his brief, they are deemed abandoned. N.C. R. App. P. Rule 28(b)(6) (2003).
NO ERROR.
Chief Judge MARTIN and Judge HUNTER concur.
Report per Rule 30(e).