### 75808, 75809. JACOBS et al. v. PILGRIM.
(367 SE2d 49)

DEEN, Presiding Judge.

Susan Jacobs brought suit against Tammie Darlene Pilgrim for injuries she sustained in an automobile collision on January 21, 1985. Mrs. Jacobs received a jury verdict in the amount of $15,000. Her husband received $2,000 on his loss of consortium claim. On appeal, Susan Jacobs contends that the court below erred in allowing a psychologist to testify that her condition was the result of a psychophysiological reaction to stress, as he could not give his opinion with reasonable medical certainty; that he spoke of it as being a possibility; and stated that this was not his field and that he would rather have a psychiatrist called in. Gerald Jacobs appeals, contending that the court below erred in refusing to allow him to present evidence as to his lost earnings, past, present, and future, as a result of his wife's illness; as to loss of earnings as a result of his loss of promotion rights; and as to the reasonable value of his loss of sick leave which resulted from the illness of his wife.

The evidence showed that Susan Jacobs worked as a waitress and bookkeeper prior to the collision and that prior to that event she had no problems with her memory. She testified that she struck her head several times on the window of the car during the course of the accident but did not think that she lost consciousness, as she was alert shortly after it occurred and remembered the details of the accident. She did not tell any of her physicians that she hit her head. Although the answers to interrogatories are not a part of the record on appeal, appellee contends that she described a number of injuries, but did not report a head injury. The physician who treated her in the emergency room immediately after the accident testified that she reported pain in her neck and left arm, but that x-rays showed no fracture or dislocation of her spine. When he saw her a few days later, she was complaining of neck and low back pain, although she had no objective signs of her complaints. The x-rays, however, did reveal some osteoarthritic spurs. A CAT scan and myelogram were normal. He believed that some of her problems were caused by obesity, which put a strain on her whole system, and that this factor and a chronic urinary tract infection caused the low back pain. The physician was of the opinion

that she was not experiencing any adverse problems as a result of the automobile accident and that she was capable of returning to work.

A psychologist who first saw Mrs. Jacobs at a Social Security disability hearing in January of 1987 testified that she had suffered a coup-contrecoup type of head injury and had suffered brain damage in the collision, resulting in memory loss. Mrs. Jacobs' psychiatrist testified that Susan Jacobs was referred to her as a patient in September of 1985 because lower back pain was causing problems in her daily life and she was becoming dependent on pain medication. The psychiatrist did not know what was causing her continuing problem with pain, but did not believe the cause was psychiatric. She had never diagnosed Mrs. Jacobs as having a brain injury; but when Mrs. Jacobs first became a patient she exhibited symptoms of depression, and the psychiatrist diagnosed her as having an adjustment disorder with a depressed mode.

A second psychologist, Dr. Adams, testified that an adjudicator with the Social Security Disability Adjudication Section made an appointment for her for an evaluation for purposes of disability determination. He administered the Minnesota Multiphasic Personality Inventory (MMPI) and was of the opinion that she suffered from organic brain syndrome resulting from the automobile accident in January of 1985, that she was suffering from chronic pain syndrome of long-standing duration and was over-medicating herself in an attempt to stop the pain. He felt that her depression was related to an organic affective syndrome and that the brain damage caused her emotions to be unstable.

Dr. Loring, Director of Neuropsychology at the Medical College of Georgia, testified that approximately ninety percent of his work involves the evaluation and determination of brain damage in patients who have suspected neuropathology, and that the balance of his work involves personality test assessments. He has had more than six years' experience interpreting the results of the MMPI and after reviewing Mrs. Jacobs' test, which was administered by Dr. Adams, concluded that her problems tended to be chronic and of long-standing duration "rather than a pattern that can . . . [be] attributed to some sort of structural brain pathology." He set forth the reasons he disagreed with Dr. Adams' interpretation of her test. He also administered a variety of other tests in an attempt to do a thorough and comprehensive evaluation. Her performance on tests which were similar varied dramatically. In the Wisconsin Card Sorting Test she made no errors, but on the Categories Test she scored in the worst of the brain-injured group. In Dr. Loring's experience, such an inconsistent performance was not consistent with brain damage. He found that for her to score so low on certain tests that were administered, her performance would be comparable to that of a person who had been in a

coma between 14 and 28 days.

On cross-examination, Dr. Loring was asked about his statement that a psychophysiological reaction can be the result of stress. He replied that he mentioned that fact as an example of the cause of an emotional reaction and that he could not rule out a psychological basis to her present functioning on the basis of the MMPI test results. He further testified that in summarizing all his previous testimony, the results and conclusions that he reached on the basis of the MMPI he could not rule out a psychological reaction, but admitted he could not say with a reasonable degree of medical certainty that it exists, as he could "prefer a psychiatrist or someone like that, to make that determination." The trial court overruled counsel's motion to strike his testimony.

1. Dr. Loring's testimony was relevant to cast doubt on the other psychologist's explanation of the causal relationship between the collision and appellant's problems. He found that Susan Jacobs' test results were not consistent with a brain injury. He did not testify that it was caused by stress, but rather that it was one possible explanation of the test results as he interpreted them.

"[M]edical testimony as to the mere possibility of a causal relation between a given event and the subsequent physical or mental condition of an injured person will not establish the causal relationship[;] it is clear that such testimony is not inadmissible as to that issue." *Ga. Cas. &c. Co. v. Jernigan,* 166 Ga. App. 872, 877 (305 SE2d 611) (1983). Medical evidence which shows the possibility of a causal relationship "in conjunction with other evidence, non-expert in nature, indicating that such a relation exists, . . . is sufficient to establish the causal relation." *National Dairy Prods. Corp. v. Durham,* 115 Ga. App. 420, 423 (154 SE2d 752) (1967). In this case, other evidence included appellant's own admission that she had undergone numerous tests (x-rays, myelograms, and an EMG) which were all normal, and that she did not report a head injury to anyone immediately after the accident although she now claims she struck her head on the car window several times. Indeed, her own psychiatrist testified that she had no explanation for Mrs. Jacobs' continuing problems. Where an expert's opinion is based wholly on speculative or conjectural matters, his opinion should be excluded. *Bankers Health &c. Ins. Co. v. Fryhofer,* 114 Ga. App. 107 (150 SE2d 365) (1966). We find that Dr. Loring's opinion was based on his interpretation of the MMPI test which was administered to Mrs. Jacobs by another psychologist; that he was shown to be an expert in interpreting such tests; and that his opinion, based on his interpretation of the MMPI, that she did not suffer from brain damage and that her problems stemmed from some other source, was properly submitted to the jury.

2. Gerald Jacobs' petition sought damages only for "the compan-

ionship, felicity and other consortium of his wife." Consortium means "the rights and duties of both husband and wife, resulting from the marriage, in other words, the marital rights and duties of the spouses *inter se*, the reciprocal rights and duties of society, companionship, love, affection, aid, services, cooperation, sexual relations, and comfort, such being special rights and duties growing out of the marriage covenants. [Cits.]" *W. J. Bremer Co. v. Graham*, 169 Ga. App. 115, 116 (312 SE2d 806) (1983). Jacobs' petition therefore did not seek special damages. "When items of special damage are claimed, they shall be specifically stated." OCGA § 9-11-9 (g). The only basis for the admission of the testimony proffered by Mr. Jacobs would have been pursuant to OCGA § 9-11-15 (b) allowing amendments to conform to the evidence. However, "[s]ince the [appellee] in this case made a clear objection to the evidence of the additional claims, it cannot be said that these claims were tried with the appellee's express or implied consent." *Burger King Corp. v. Garrick*, 149 Ga. App. 186, 188 (253 SE2d 852) (1979). "Clearly, the instant testimony falls within the meaning of this section in that the testimony presented was outside the pleadings and the defendant objected because such testimony would prejudice her in maintaining her defense. While the trial court is *permitted* to admit such evidence by allowing the pleadings to be amended and may grant a continuance to enable the objecting party an opportunity to prepare a defense, the above cited [Code section] *does not require* the trial court to admit testimony that is irrelevant and outside the pleadings. Thus, we are of the opinion that the trial court did not err in excluding the testimony in question." (Emphasis supplied.) *Madaris v. Madaris*, 224 Ga. 577, 579 (163 SE2d 745) (1968). The court below did not err in refusing to allow him to prove his special damages.

*Judgments affirmed. Carley and Sognier, JJ., concur.*

DECIDED FEBRUARY 8, 1988 — REHEARINGS DENIED FEBRUARY 23, 1988 AND MARCH 8, 1988 —

*Jack L. Cooper*, for appellant.
*Richard E. Miley*, for appellee.