## A94A2168. DRAKE v. LaRUE CONSTRUCTION COMPANY et al.
(451 SE2d 792)

BEASLEY, Presiding Judge.

Drake was employed by LaRue Construction Company as a manual laborer on a construction site, when a nail gun fell, hit him on the head, fractured his skull, and dislocated his shoulder. LaRue, insured by Hartford, accepted the head and shoulder injury as compensable and began paying weekly total-disability income benefits.

Drake was treated for the skull fracture by Dr. Downing, a neurosurgeon, until he was discharged without limitation. The shoulder injury was treated by Dr. Buelvas, an orthopedist. He dismissed Drake with a five percent permanent physical impairment of the body as a whole, for which Drake was paid workers' compensation benefits.

LaRue subsequently filed a "notice of suspension of income benefits" form (WC-2) on the ground that Drake had returned to work with a different employer. Drake filed a "notice of claim/request for a hearing" form (WC-14) on the ground that the suspension was improper in that his head injury caused him to have disabling cognitive losses.

Although Drake has a history of psychological and alcohol-related

problems dating back to his childhood, family members testified that he underwent personality changes after his head injury. Also, he was arrested for DUI, being a habitual violator, and various traffic offenses. While incarcerated, he was evaluated by Dr. Grant, a neuropsychologist.

At the commencement of the hearing at which Drake's testimony was received, Drake asserted as his position that his cognitive losses, although diagnosed only recently, had been ongoing since he received the head injury. LaRue argued, and the ALJ agreed, that since Drake had been released to return to work, the issue should be characterized as a change in condition.

At a subsequent hearing, Dr. Grant testified that although Drake had certain preexisting cognitive deficits, the blow to his head resulted in numerous additional ones.

The ALJ's award found that Drake had not carried his burden of showing that his psychological problems are related to his compensable physical injury. The Board's award on appeal found that Drake had shown by a preponderance of the evidence that some of his psychological problems are causally connected to his on-the-job injury and ordered the recommencement of total disability income benefits.

On appeal, the superior court cited *Evco Plastics v. Burton*, 200 Ga. App. 121 (407 SE2d 60) (1991), and other cases, for the rule that a claimant in change-in-condition cases must show that the inability to secure suitable employment elsewhere was proximately caused by his previous accidental injury. It held that since the evidence showed that Drake had failed to look for work, he did not prove his case. It also held that the Board had based its award upon incompetent evidence in that, under *Chandler Exterm. v. Morris*, 262 Ga. 257 (416 SE2d 277) (1992), a neuropsychologist is not qualified to testify regarding causation of psychological problems. The court recognized that the statute upon which the *Chandler* decision was based was amended effective July 1, 1993. However, the court ruled that Grant's testimony was submitted prior to the amendment's effective date and remained inadmissible. Citing *Handy v. Speth*, 210 Ga. App. 155, 156 (2) (435 SE2d 623) (1993) (which applied *Chandler* after the amendment's effective date), the court also questioned the effect of the amendment upon the *Chandler* decision. We granted Drake's application for discretionary appeal.

1. The court erred in characterizing this as a change-in-condition case.

*Evco Plastics*, supra, and like cases, are applicable when an employee who has received a disabling injury has actually returned to work and is discharged for a cause unrelated to the injury. Drake never returned to work. Accordingly, the burden would be on LaRue to justify its suspension of benefits based upon the assertion that

Drake had recovered from his physical injuries. See *Johnson Controls v. McNeil*, 211 Ga. App. 783, 785 (1) (440 SE2d 528) (1994). The issue raised by Drake was whether he had been rendered psychologically or mentally disabled as of the date the head injury was inflicted. The ALJ and Board correctly concluded that as to this issue, the burden on Drake in this proceeding was to show that his disabilities are causally connected to his physical injury.

2. The court erred in refusing to consider the testimony of neuropsychologist Grant concerning the issue of whether Drake's cognitive deficits were caused by his head injury.

In *Chandler*, the question for decision was whether a neuropsychologist was competent to testify that each member of a family he had interviewed and evaluated had organic brain disease as a result of exposure to a neuro-toxic chemical. Reversing Division 2 of *Morris v. Chandler Exterm.*, 200 Ga. App. 816, 817 (409 SE2d 677) (1991) (which had relied on *Jacobs v. Pilgrim*, 186 Ga. App. 260, 262 (1) (367 SE2d 49) (1988)), the Supreme Court answered this question in the negative. The Court held that a psychologist is not qualified to render an opinion concerning a diagnosis of a mental disorder when such disorder requires a professional opinion as to a physical disorder, although a physical disorder may manifest psychological effects concerning which a psychologist may render an opinion. 262 Ga. at 258, n. 2. The Court arrived at this holding by comparing OCGA § 43-39-1 (2) (which defined the practice of psychology as including the diagnosis of mental disorders) with OCGA § 43-34-20 (3) (which in effect defines the practice of medicine as including the diagnosis or treatment of physical or mental disorders).

Effective July 1, 1993, the General Assembly amended OCGA § 43-39-1. It added paragraph (2), which defines the practice of neuropsychology as "the subspecialty of psychology concerned with the relationship between the brain and behavior, including the diagnosis of brain pathology through the use of psychological tests and assessment techniques." Former paragraph (2) was redesignated as paragraph (3), and it now defines the practice of psychology so as to include "diagnosing and treating mental and nervous disorders and illnesses, rendering opinions concerning diagnoses of mental disorders, including organic brain disorders and brain damage."

We discern that the intent of the amendment was to legislatively overrule *Chandler*, at least to the extent that it held that a neuropsychologist is not qualified to render an opinion concerning the diagnosis of the pathology of organic brain disorders and brain damage. Under the amendment, Grant is not incompetent to testify that in his opinion Drake's cognitive deficits were caused by his head injury.

Although Grant's testimony was not admissible under *Chandler* (the law in effect when the ALJ heard this testimony and rendered

his award), it is admissible under the amendment (the law in effect when the Board rendered its award and when the superior court rendered its decision). Insofar as it is applicable here, the amendment concerns a rule of evidence, which is procedural. The legislature did not express an intent that the amendment not be applied retroactively. See *Polito v. Holland*, 258 Ga. 54, 55 (365 SE2d 273) (1988). Therefore, the court erred in not ruling that under the amendment, Grant's testimony can be considered in support of the Board's award. See *Osteen v. Osteen*, 244 Ga. 445, 446 (260 SE2d 321) (1979), which held that a reviewing court should apply the law as it exists at the time of its judgment rather than the law prevailing at the rendition of the judgment under review, and may therefore reverse a judgment that was correct at the time it was rendered and affirm a judgment that was erroneous at the time, where the law has been changed in the meantime and where such application of the new law will impair no vested right under the prior law.

*Handy*, supra, decided after the effective date of the amendment, involved a personal injury action tried before the amendment's effective date. The jury returned a verdict in favor of defendant. We held, under the authority of *Chandler*, that the trial court properly precluded testimony of a neuropsychologist regarding plaintiff's psychological disorder as having been caused by a brain injury due to a blow to the head. No issue was raised in regard to whether the judgment should have been reversed and a new trial ordered on the ground that the neuropsychologist's testimony had become admissible under the law in effect when the appeal was decided.

*Judgment reversed. Andrews and Johnson, JJ., concur.*

DECIDED NOVEMBER 17, 1994 —
RECONSIDERATION DENIED DECEMBER 5, 1994 —

*Cletus W. Bergen II, Davis Cohen,* for appellant.
*Shari S. Miltiades,* for appellees.
*Taylor & Harp, J. Sherrod Taylor,* amicus curiae.