**FOURTH DIVISION**
**BARNES, P. J.,**
**DILLARD AND MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 18, 2014**

# In the Court of Appeals of Georgia

A14A1404. FREEMAN et al. v. LTC HEALTHCARE OF STATESBORO, INC. d/b/a WESTWOOD NURSING CENTER et al.

MCFADDEN, Judge.

Hospice patient Mary L. Freeman died shortly after arriving at Westwood Nursing Center, a long-term care facility. Her husband, Charles W. Freeman, acting individually and as administrator for her estate (collectively, "Freeman"), brought a malpractice action against several defendants including LTC Healthcare of Statesboro, Inc. d/b/a Westwood Nursing Center ("Westwood"), the appellee in this case. The trial court granted summary judgment to Westwood on the ground that Freeman had not pointed to evidence that Mrs. Freeman's death had been caused by the alleged breaches in the standard of care. In so ruling, the trial court declined to consider the expert opinion testimony of a nurse, concluding that she was not

competent to opine on causation. We decline to adopt a "bright line" rule that nurses may never testify to causation in medical malpractice cases, but we nevertheless affirm the trial court's grant of summary judgment because the evidence shows that the nurse's causation opinion in this case fell outside her realm of expertise.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

> A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. . . . Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Cowart*, 287 Ga. at 623 (1) (a) (citations and punctuation omitted). We review a grant of summary judgment de novo and construe the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Abdel-Samed v. Dailey*, 294 Ga. 758, 760 (1) (755 SE2d 805) (2014).

So viewed, the evidence shows that in February 2003, Mrs. Freeman underwent surgery to remove a benign brain tumor. She experienced serious complications following the surgery including quadriplegia, and she had to have a tracheostomy tube inserted.

On March 19, 2003, Mrs. Freeman was transferred from the hospital to Westwood, arriving there around 2 p.m. The medical orders accompanying her transfer instructed, among other things, that she receive albuterol treatments, that her oxygen level be monitored, and that her tracheostomy tube be suctioned. Westwood's medical records reflect that at 4 p.m. Mrs. Freeman was given a feeding tube, but they do not reflect that she received any other care that afternoon or evening.

Shortly before midnight, a Westwood nurse noticed that Mrs. Freeman was in distress; she had "frothy mucous coming from her mouth and trach [sic]," was "non-responsive," and had "no blood pressure and a faint pulse." In the early morning of March 20, Mrs. Freeman died of respiratory failure.

In support of his malpractice claims against Westwood, Freeman presented the expert opinion of Donna Jones, a registered nurse. In her affidavit and deposition testimony, Jones opined that Westwood had breached the applicable standard of care by: failing to follow the medical orders for Mrs. Freeman's care, including failing to

3

provide albuterol treatments, tracheostomy suctioning, and oxygen monitoring; failing to thoroughly assess Mrs. Freeman's condition upon her admission; and failing to assess, treat, report and document any changes to her condition. Jones opined that,

> based upon a reasonable degree of medical probability, had [Westwood's] nursing staff met the standard of care for nurses caring for quadriplegic patients with tracheostomy tubes when Mrs. Freeman was in [Westwood's] care, this would have significantly altered Mrs. Mary Freeman's treatment and prevented her death from respiratory failure[.]

Westwood sought summary judgment on the ground that there was an absence of evidence showing that the alleged breaches of the standard of care proximately caused Mrs. Freeman's death. The trial court agreed, holding that, while Jones was competent to give an opinion on whether Westwood breached the applicable standard of care, she was not competent to give an opinion on causation. Accordingly, the trial court granted summary judgment to Westwood.

To recover for medical malpractice, a plaintiff must demonstrate, to a reasonable degree of medical probability, that a breach of the applicable standard of care proximately caused the plaintiff's injury. *Zwiren v. Thompson*, 276 Ga. 498, 499, 503 (578 SE2d 862) (2003); *Berrell v. Hamilton*, 260 Ga. App. 892, 896 (581 SE2d 398) (2003). The element of causation must be established through expert testimony

4

because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson. Using the specialized knowledge and training of his field, the expert's role is to present to the jury a realistic assessment of the likelihood that the defendant's alleged negligence caused the plaintiff's injury.

*Zwiren*, 276 Ga. at 500-501(citations and punctuation omitted); accord *Knight v. Roberts*, 316 Ga. App. 599, 604 (1) (a) (730 SE2d 78) (2012).

Pointing to decisions from other jurisdictions, Westwood invites us to adopt what amounts to a "bright line" rule precluding nurses from giving expert opinions on causation in medical malpractice cases. We find such a "bright line" rule unnecessary, because Georgia law provides a framework for considering such expert opinions on a case-by-case basis. "Georgia law . . . does not mandate that only medical doctors be permitted to testify regarding medical issues; others with certain training and experience may testify on issues within the parameters of their experience." *Sinkfield v. Oh*, 229 Ga. App. 883, 885 (495 SE2d 94) (1997) (citations and punctuation omitted) (holding trial court erred in excluding witness educated in pharmacology and toxicology from testifying in medical malpractice case that defendant doctor's prescription of medication was "predominate major contributing

5

factor to the demise of [plaintiff's] fetus"). See also *Hankla v. Jackson*, 305 Ga. App. 391, 398 (2) (b) (699 SE2d 610) (2010) (holding trial court did not err in allowing biomechanical engineer to testify in medical malpractice case about "the myriad causes of brachial plexus injuries in general, the normal forces exerted by a mother and birth attendants during labor and delivery, and the current medical literature regarding causation of this type of injury"). This rule extends to a licensed registered nurse testifying as an expert within the areas of her expertise. *McCormick v. Avret*, 246 Ga. 401 (271 SE2d 832) (1980); *Hyde v. State*, 189 Ga. App. 727, 728 (1) (377 SE2d 187) (1988).

"Of course, it is axiomatic that no expert can testify outside the limits of his area of expertise," *Sinkfield*, 229 Ga. App. at 886, and Georgia law considers opinions about medical diagnoses to fall outside the limits of the expertise of a non-physician. See OCGA § 43-34-21 (3) ("[t]o practice medicine" means, among other things, "to hold oneself out to the public as being engaged in the diagnosis . . . of disease, defects, or injuries of human beings"); *Chandler Exterminators v. Morris*, 262 Ga. 257, 259 (3) (c) (416 SE2d 277) (1992) (citing predecessor to OCGA § 43-34-21 (3) to hold neuropsychologist not qualified to render opinion concerning diagnosis of mental disorder when disorder required professional opinion as to physical disorder),

6

superceded by statute as explained in *Drake v. LaRue Constr. Co.*, 215 Ga. App. 453, 455 (2) (451 SE2d 792) (1994) (intent of statutory amendment defining practice of neuropsychology to include certain diagnoses was to overrule *Chandler* as to neuropsychologists); *Hunnicutt v. Hunnicutt*, 237 Ga. 497 (228 SE2d 881) (1976) (diagnosis and potential continuance of disease or other medical condition are "medical questions to be established by physicians as expert witnesses"); *Hankla*, 305 Ga. App. at 398 (2) (b) (although biomechanical engineer could give other expert opinion testimony about brachial plexus injuries, trial court erred in failing to preclude him from providing "expert testimony regarding any questions of medical treatment or diagnosis" because he did not have "any experience diagnosing or treating [such] injuries"). Cf. *Rainwater v. State*, 210 Ga. App. 594, 595-596 (3) (436 SE2d 772) (1993) (trial court did not err in permitting expert in biology, who was not a physician, to give an opinion on whether a blood test established paternity, noting that "no diagnosis or treatment of a medical disorder [was] involved").

Moreover, Jones herself deposed that medical diagnoses fell outside her realm of experience. She contrasted a "medical diagnosis," which involved "a medical issue," with a "nursing diagnosis," which involved the identification of "signs and symptoms." She used chest pain to illustrate this distinction, testifying: "Chest pain

7

is a [nursing] diagnosis. What caused the chest pain, I can't say that it was pneumonia or it was a heart attack, an MI. I can't diagnose that. But chest pain is a symptom, but it's also a diagnosis." As to Mrs. Freeman's condition, Jones deposed: "[H]er outcome was death. I mean, I think I can pretty much give that as a nursing diagnosis." But when asked whether determining the cause of Mrs. Freeman's respiratory failure involved a medical diagnosis, Jones replied, "I don't have an opinion."

The evidence here does not establish the specific cause of Mrs. Freeman's respiratory failure. So as Jones's chest pain example makes clear, the causation opinion in this case involved a "medical diagnosis" rather than a "nursing diagnosis." The question in this case was not whether Mrs. Freeman died of respiratory failure but whether the breaches of care attributed to Westwood were the proximate cause of that respiratory failure. The issues raised by that question went beyond the identification of signs and symptoms, and even beyond the identification of the particular symptoms exhibited by Mrs. Freeman shortly before her death. See *Phillips v. Alamed Co.*, 588 So. 2d 463, 465 (Ala. 1991) (noting "the important distinction between the question of what ailment or organic failure caused [a patient's] death and the question of whether [the defendant's] alleged negligence was the proximate cause

8

of her death"). Instead, the proximate cause question in this case raised issues about the pharmacological and physiological reactions Mrs. Freeman would have had to the ordered treatment (or would have had in the absence of the ordered treatment), given her particular medical and physical condition on March 19, 2003. A pulmonologist who treated Mrs. Freeman in the hospital testified that the symptoms Mrs. Freeman experienced shortly before her death could be caused by several different things. Just as identifying the reason for the chest pain in Jones's deposition example involved a medical diagnosis beyond her nursing expertise, so did identifying the reason why Mrs. Freeman died from respiratory distress. See *Elswick v. Nichols*, 144 FSupp2d 758, 765-767 (ED Ky 2001) (nurse could testify to breaches of nursing standard of care, but although she held strong opinion that those breaches caused patient to develop hospital-acquired infection, she was not competent to give causation opinion because, as nurse conceded, question of how patient received infection involved medical diagnosis outside nurse's area of expertise), *aff'd sub nom. Elswick v. Pikeville United Methodist Hosp. of Ky.*, 50 Fed. Appx. 193 (6th Cir. 2002).

Without Jones's opinion, Freeman has not shown evidence demonstrating the necessary causal link between Westwood's alleged breaches of the standard care and

Mrs. Freeman's death. Accordingly, the trial court did not err in granting summary judgment to Westwood.

*Judgment affirmed. Barnes, P. J., concurs. Dillard, J., concurs in the judgment only.*

A14A1404. FREEMAN et al. v. LTC HEALTHCARE OF STATESBORO, INC. d/b/a WESTWOOD NURSING CENTER et al.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As such, the majority's opinion decides only the issues presented in the case *sub judice* and may not be cited as binding precedent. *See* Court of Appeals Rule 33 (a).