

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE APR 27 2017
Fairhurst CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on April 27, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RUDY FRAUSTO, | ) | No. 93312-0 |
| | ) | |
| Appellant, | ) | EN BANC |
| | ) | |
| v. | ) | Filed: APR 27 2017 |
| | ) | |
| YAKIMA HMA, LLC, a Washington State | ) | |
| Corporation, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

YU, J. — The sole issue in this case is whether advanced registered nurse practitioners (ARNPs) are per se disqualified from testifying on proximate cause in a medical negligence case. For the reasons discussed below, we hold that ARNPs may be qualified to testify regarding causation in a medical malpractice case if the trial court determines that the ARNP meets the threshold requirements of ER 702. The ability to independently diagnose and prescribe treatment for a particular malady is strong evidence that the expert might be qualified to discuss the cause of

that same malady. We therefore reverse the trial court and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

Rudy Frausto, a 70-year-old quadriplegic man, checked in to Yakima HMA LLC for pneumonia. While there, the nurses allegedly failed to provide proper care in the form of moving him, turning him, and providing him with an appropriate bed. As a result, Frausto developed pressure ulcers and filed suit against the medical center.[1]

Yakima HMA moved for summary judgment, arguing that Frausto had failed to provide expert testimony as required by statute. In response, Frausto offered the sworn affidavit of Karen Wilkinson, an ARNP with more than 30 years of experience "providing direct patient care, serving as clinical nursing faculty for students providing care, and publishing nursing texts on the subject." Clerk's Papers at 127, 136-37. Wilkinson stated her "professional objective medical opinion, on a more probable than not basis," that the treating nurses breached the applicable standard of care and that this breach proximately caused Frausto's pressure ulcers. *Id.* at 128.

---

[1] In his suit, Frausto did not name any physicians or nurses individually. Frausto later conceded that nurses may not express an opinion as to the standard of care for physicians and stated that the claims would allege fault on the part of the nursing staff alone. Verbatim Tr. of Proceedings (Oct. 21, 2015) at 25. We have previously held that only physicians may testify as to another physician's standard of care, and we do not reconsider that holding today. *See Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 227, 770 P.2d 182 (1989).

The trial court held that while Wilkinson was certainly qualified as an expert and could speak to the applicable standard of care, the law did not permit Wilkinson to testify on the issue of proximate cause. Frausto initially appealed to Division Three of the Court of Appeals but later moved to transfer the case to this court. Our commissioner granted the motion. Ruling Granting Mot. to Transfer, *Frausto v. Yakima HMA, LLC*, No. 93312-0 (Wash. Sept. 26, 2016).

ISSUE

May an ARNP express an opinion on proximate cause in a medical malpractice case in accordance with RCW 7.70.040?

ANALYSIS

Washington's statutory scheme creates several categories of care providers under the "nursing" umbrella—licensed practical nurses, registered nurses, and ARNPs—each with varying certification requirements and scopes of practice. *See* RCW 18.79.040-.060. Our legislature has designated ARNPs as the highest tier of nurses, "prepared and qualified to assume primary responsibility and accountability for the care of patients" within the narrow scope of their particular certifications. RCW 18.79.050; WAC 246-840-300(1). We need consider the qualifications of only ARNPs for purposes of this case.

Yakima HMA asserts first that we should review the trial court's ruling for abuse of discretion. Ordinarily, evidentiary rulings are a matter of discretion by

3

the trial court and will not be upset on review absent an abuse of discretion. *McKee v. Am. Home Prods. Corp.*, 113 Wn.2d 701, 706, 782 P.2d 1045 (1989). However, it is not clear that the trial court even attempted to exercise its discretion in resolving an evidentiary issue, believing instead that our case law foreclosed the possibility of Wilkinson's testimony on proximate cause. Verbatim Tr. of Proceedings (Oct. 21, 2015) (VTP) at 33 (noting that "the state of the law . . . is that the nurse, no matter how well qualified, isn't capable of giving a decision on proximate cause"). In any event, "[t]he de novo standard of review is used by an appellate court when reviewing all trial court rulings made in conjunction with a summary judgment motion." *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Here, it is undisputed that the decision made by the trial court that is on review was made pursuant to Yakima HMA's motion for summary judgment. Because the trial court dismissed this case on summary judgment, our review is de novo. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006).

In Washington, plaintiffs in a medical malpractice action must prove two key elements: (1) that the defendant health care provider failed to exercise the standard of care of a reasonably prudent health care provider in that same profession and (2) that such failure was a proximate cause of the plaintiff's injuries. RCW 7.70.040. With regard to the standard of care, we have repeatedly

4

held that "'expert testimony will generally be necessary to establish the standard of care.'" *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 228, 770 P.2d 182 (1989) (quoting *Harris v. Groth*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983)). The expert must have "sufficient expertise in the relevant specialty" such that the expert is familiar with the procedure or medical problem at issue. *Id.* at 229.

To establish causation, the plaintiff must show that the alleged breach of the standard of care "was a proximate cause of the injury complained of." RCW 7.70.040(2). Like the standard of care, expert testimony is always required except in those few situations where understanding causation "does not require technical medical expertise."[2] *Young*, 112 Wn.2d at 228 (giving the examples of "amputating the wrong limb or poking a patient in the eye while stitching a wound on the face"). "Whether an expert is qualified to testify is a determination within the discretion of the trial court." *Miller v. Peterson*, 42 Wn. App. 822, 832, 714 P.2d 695 (1986). In this case, however, the trial court did not believe it had any discretion to allow a nursing expert to testify regarding medical causation as a matter of law. VTP (Oct. 21, 2015) at 33.

---

[2] Frausto argues that the injuries here are the type that do not require expert testimony on causation. Appellant's Br. at 9 ("The plain meaning of bedsore implies its cause."). We disagree. As Frausto notes in his brief, "bedsores" are described as "'an ulceration of tissue deprived of [nutrition] by prolonged pressure.'" *Id.* The ordinary juror is unlikely to understand this process without the aid of expert testimony.

Although we have not opined on this specific issue, the Court of Appeals has offered conflicting analyses on this point in a series of three opinions.

In the first opinion, the family of a deceased patient brought suit against a hospital after the patient died from internal bleeding. *Colwell v. Holy Family Hosp.*, 104 Wn. App. 606, 609, 15 P.3d 210 (2001). The family alleged that hospital staff failed to adequately monitor the patient. *Id.* The trial court dismissed the action on summary judgment, noting that the family failed to make a prima facie case because their expert registered nurse "'[was] not competent to render an opinion regarding causation.'" *Id.* at 610. The Court of Appeals affirmed, holding that "a medical doctor must still generally connect [the patient's] death to the alleged nursing deficiencies." *Id.* at 613. Thus, the court found that the trial court "did not abuse its discretion in finding [the expert registered nurse] incompetent to testify to medical causation." *Id.*

The court reaffirmed its prior holding within a more narrow scope in *Davies v. Holy Family Hospital*, 144 Wn. App. 483, 501, 183 P.3d 283 (2008).[3] In *Davies*, a patient passed away following a renal biopsy when her internal bleeding went unrecognized and untreated in the hospital. *Id.* at 488. In a medical negligence action, the patient's estate offered declarations from a radiologist and a

---

[3] Although the court decided *Davies* on February 21, 2008, publication of the opinion was not ordered until May 13, 2008. Thus, this case was decided second in the trilogy but published third.

6

registered nurse. *Id.* at 490. The trial court entered summary judgment dismissing the case, and the Court of Appeals affirmed. *Id.* at 487, 491. In addressing the issue of causation, the court unequivocally held that "a nurse is not competent to testify as to the patient's cause of death." *Id.* at 501 (citing *Colwell*, 104 Wn. App. at 613).

But just five days later, the Court of Appeals reconsidered its reliance on *Colwell* in dicta when it decided *Hill v. Sacred Heart Medical Center*, 143 Wn. App. 438, 446, 177 P.3d 1152 (2008). In *Hill*, a patient brought suit against the hospital for failing to monitor injections of a heparin compound following bilateral knee surgery, resulting in a stroke, a pulmonary embolism, and deep vein thrombosis. *Id.* at 441-43. On summary judgment, the trial court dismissed the case based on deficiencies in the affidavits of three medical doctors and one registered nurse. *Id.* at 445. The Court of Appeals reversed, finding that the registered nurse provided evidence of the applicable standard of care while a medical doctor opined on the issue of causation. *Id.* at 449-50.

Although unnecessary to the resolution of the case, the court reexamined its holding in *Colwell* and found that "[t]here is nothing in the statutory scheme that suggests that a nurse should be categorically denied the right to express opinions on the proximal relationship between a breach of a duty of care, and an injury." *Id.* at 446. Instead, the court pointed to our rules of evidence providing that "[a]

witness may testify as an expert if he or she possess knowledge, skill, experience, training, or education that will assist the trier of fact." *Id.* at 447 (citing ER 702). In sum, the court stated that it is "[t]he scope of the expert's knowledge, not his or her professional title, [that] should govern 'the threshold question of admissibility of expert medical testimony in a malpractice case.'" *Id.* (quoting *Pon Kwock Eng v. Klein*, 127 Wn. App. 171, 172, 110 P.3d 844 (2005)).

We believe the court's analysis in *Hill* is correct. A majority of jurisdictions permit testimony from nurses[4] regarding causation in medical malpractice cases. In this case, Yakima HMA points to several jurisdictions that have held otherwise. However, there are two key factors that lead us to reach the opposite conclusion. First, Washington's nursing statutes differ from statutes in other states in that our legislature has empowered ARNPs to diagnose illnesses and injuries to at least a limited degree. RCW 18.79.050. Second, the jurisdictions allowing nurses to testify on causation rely on ER 702 for the requisite qualification of experts. If an ARNP is qualified to independently diagnose a particular medical condition, it follows that the ARNP may have the requisite expertise under ER 702 to discuss medical causation of that condition.

A.     *Washington law provides that ARNPs may independently diagnose some illnesses and injuries*

---

[4] The rules from these other jurisdictions draw no distinction between different types of nursing licenses, instead referring only to nurses or registered nurses generally. See cases cited *infra* note 5.

8

In Washington, the practice of registered nurses generally includes "[t]he observation, assessment, diagnosis, care or counsel, and health teaching of individuals with illnesses, injuries, or disabilities." RCW 18.79.040(1)(a). "Diagnosis" has been defined in the registered nursing context as "the identification of, and discrimination between, the person's physical and psychosocial signs and symptoms." RCW 18.79.020(4). ARNPs operate at the same baseline level as registered nurses, being authorized to perform "the acts of a registered nurse and the performance of an expanded role in providing health care services as recognized by the medical and nursing professions." RCW 18.79.050.

However, ARNPs are further empowered to practice independently and "to assume primary responsibility and accountability for the care of patients." WAC 246-840-300(1). This includes the authority to "[e]xamine patients and establish diagnoses by patient history, physical examination, and other methods of assessment," and even allows for interpreting diagnostic tests and prescribing therapies and medical equipment. WAC 246-840-300(5)(a), (c), (e). Although we have not previously interpreted Washington's statutory and administrative schemes, the plain language makes clear that ARNPs, alongside physicians, are health care providers with specialized training allowing for at least some degree of independent medical diagnosis and treatment.

Yakima HMA argues that the majority rule in the United States prohibits

nurses from expressing an opinion as to medical causation in malpractice actions.

Resp't's Br. at 6-7. This is not so. At least eight states[5] permit nurses to testify as

to causation, whereas only seven states[6] expressly forbid it. The cases cited by

Yakima HMA all rely on provisions within their state's statutory frameworks

prohibiting nurses from making medical diagnoses; in contrast, Washington's

statutory framework permits ARNPs to practice independently and make diagnoses

within the limited scope of their certification. Thus, the minority rule categorically

---

[5] The eight states include Idaho, Kansas, Nevada, New York, North Carolina, Ohio, Oklahoma, and Pennsylvania. *See Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 785, 25 P.3d 88 (2001); *Mellies v. Nat'l Heritage, Inc.*, 6 Kan. App. 2d 910, 918, 636 P.2d 215 (1981); *Williams v. Eighth Judicial Dist. Ct.*, 127 Nev. 518, 526, 262 P.3d 360 (2011); *Salter v. Deaconess Family Med. Ctr.*, 267 A.D.2d 976, 976, 701 N.Y.S.2d 586 (App. Div. 1999); *State v. Tyler*, 346 N.C. 187, 204, 485 S.E.2d 599 (1997); *Morris v. Children's Hosp. Med. Ctr.*, 73 Ohio App. 3d 437, 447, 597 N.E.2d 1110 (1991); *Gaines v. Comanche County Med. Hosp.*, 2006 OK 39, 143 P.3d 203, 209; *Freed v. Geisinger Med. Ctr.*, 601 Pa. 233, 240, 971 A.2d 1202 (2009). In addition, six more states contain case law arguably permitting nurse testimony: Arizona, Michigan, New Hampshire, Rhode Island, South Carolina, and Virginia. *See Bush v. Thoratec Corp.*, 13 F. Supp. 3d 554, 577 (E.D. La. 2014) (federal court interpreting Virginia law); *Salica v. Tucson Heart Hosp.-Carondelet, LLC*, 224 Ariz. 414, 419, 231 P.3d 946 (2010); *Rickman v. Malone*, No. 313661, 2014 WL 1679133, at *4 (Mich. Ct. App. Apr. 24, 2014) (unpublished); *Smith v. HCA Health Servs. of N.H., Inc.*, 159 N.H. 158, 162-63, 977 A.2d 534 (2009); *Malinou v. Miriam Hosp.*, 24 A.3d 497, 510 (R.I. 2011); *James v. Lister*, 331 S.C. 277, 287, 500 S.E.2d 198 (1998).

[6] The seven states include Alabama, Georgia, Illinois, Indiana, Mississippi, Tennessee, and Texas. *See Phillips v. Alamed Co.*, 588 So. 2d 463, 465 (Ala. 1991); *Freeman v. LTC Healthcare of Statesboro, Inc.*, 329 Ga. App. 763, 766, 766 S.E.2d 123 (2014); *Seef v. Ingalls Mem'l Hosp.*, 311 Ill. App. 3d 7, 21, 724 N.E.2d 115 (1999); *Long v. Methodist Hosp. of Ind., Inc.*, 699 N.E.2d 1164, 1169 (Ind. Ct. App. 1998); *Vaughn v. Miss. Baptist Med. Ctr.*, 2008-CA-00987-SCT, 20 So. 3d 645, 652 (Miss. 2009); *Richberger v. W. Clinic, PC*, 152 S.W.3d 505, 511 (Tenn. Ct. App. 2004); *Esquivel v. El Paso Healthcare Sys., Ltd.*, 225 S.W.3d 83, 90 (Tex. App. 2005). In addition, two more states contain case law arguably excluding nurse testimony: Minnesota and Kentucky. *See Elswick v. Nichols*, 144 F. Supp. 2d 758, 767 (E.D. Ky. 2001); *Jenco v. Crow*, No. A14-0375, 2015 WL 303653, at *2 (Minn. Ct. App. Jan. 26, 2015) (unpublished).

excluding all types of nurses from offering causation testimony should not apply in Washington. The cases cited by Yakima HMA demonstrate this point.

For example, the Supreme Court of Mississippi has held that "nursing experts cannot opine as to medical causation and are unable to establish the necessary element of proximate cause." *Vaughn v. Miss. Baptist Med. Ctr.*, 2008-CA-00987-SCT, 20 So. 3d 645, 652 (Miss. 2009). However, the court relied on Mississippi's nursing statute that *excludes* from nursing practice "acts of medical diagnosis or prescriptions of medical, therapeutic or corrective measures." MISS. CODE ANN. § 73-15-5(2). Thus, the court reasonably held that "[s]ince medical diagnosis is outside a nurse's scope of practice, logically it would follow that a nurse should not be permitted to testify as to his/her diagnostic impressions or as to the cause of a particular infectious disease or illness." *Vaughn*, 20 So. 3d at 652. By contrast, Washington's statutory scheme expressly *permits* ARNPs to independently diagnose conditions and prescribe medical, therapeutic, or corrective measures. RCW 18.79.050.

In Indiana, the Court of Appeals held that "the determination of the medical cause of injuries, which is obtained through diagnosis, for purposes of offering expert testimony is beyond the scope of nurses['] professional expertise." *Long v. Methodist Hosp. of Ind., Inc.*, 699 N.E.2d 1164, 1169 (Ind. Ct. App. 1998). There, the court relied on the "significant difference in the education, training, and

authority to diagnose and treat diseases between physicians and nurses." *Id.*

However, this "significant difference" was based entirely on statute. Indiana

physicians were authorized to engage in the "diagnosis, treatment, correction, or

prevention of any disease." IND. CODE § 25-22.5-1-1.1(a)(1)(A). In contrast,

Indiana nurses were empowered only to engage in "preventive, restorative,

maintenance, and promotion activities which include meeting or assisting with

self-care needs, counseling, and teaching." *Id.* § 25-23-1-1.1(d). Washington's

statutory scheme does not contain such sweeping limits to the scope of practice as

compared to Indiana's code.

And in Texas, their Court of Appeals held that "a nurse is prohibited from

making a medical diagnosis or prescribing corrective or therapeutic treatment."

*Esquivel v. El Paso Healthcare Sys., Ltd.*, 225 S.W.3d 83, 90 (Tex. App. 2005).

The court relied on state law that expressly excluded from "'[p]rofessional

nursing'" the "acts of medical diagnosis or the prescription of therapeutic or

corrective measures." TEX. OCC. CODE ANN. § 301.002(2). Neither Washington's

nursing statute nor its administrative code carve out similar exclusions.

Taken together, the cases from other jurisdictions that categorically disallow

nurses from opining on causation in medical malpractice actions rely on explicit

limitations and exclusions in their state statutes regulating the practice of nursing.

Washington's statutes do not contain similar limitations. Thus, we find this particular line of out-of-jurisdiction precedent unpersuasive.

B.    *Washington's ER 702 requires only that an expert discussing causation have scientific, technical, or other specialized knowledge*

In contrast, Frausto points to several cases from other jurisdictions holding that nurses are certainly qualified to offer an opinion on medical causation. The common thread among these cases—and indeed the cases from all eight states allowing nurse testimony in some form—is that the reasoning is based not on those states' nursing statutes but on their rules of evidence. Because ARNPs in Washington State receive substantially more education, training, and diagnostic authority than registered nurses, a trial court might find in accordance with ER 702 that a particular ARNP is qualified to testify as an expert regarding causation.

The second statutory element of medical malpractice cases has resulted in relatively few controversies over the years. RCW 7.70.040(2) requires proof only that the defendant health care provider's failure to adhere to the standard of care "was a proximate cause of the injury complained of." Except in limited circumstances, plaintiffs in a medical malpractice case must establish proximate cause through expert testimony. *Douglas v. Freeman*, 117 Wn.2d 242, 252, 814 P.2d 1160 (1991). "The admissibility of expert testimony is governed by [our Rules of Evidence] and requires a case by case inquiry." *State v. Willis*, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004).

13

Accordingly, our Rules of Evidence detail the circumstances under which a witness may offer testimony in the form of an expert opinion. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." ER 702. The trial court acts as a gatekeeper, determining whether a particular expert's testimony will assist the trier of fact and excluding evidence that does not meet this standard. *City of Fircrest v. Jensen*, 158 Wn.2d 384, 397, 143 P.3d 776 (2006). Frausto argues that, absent any additional statutory requirements, the Rules of Evidence resolve the issue of who may testify regarding proximate cause in a medical malpractice action. In support, Frausto points to several jurisdictions that have allowed nurses to offer causation testimony on this basis.

For example, the Supreme Court of North Carolina has previously held that a nurse was qualified to testify regarding the cause of death for a patient suffering severe burn trauma. *State v. Tyler*, 346 N.C. 187, 204, 485 S.E.2d 599 (1997). Without discussion of the statutory qualifications of nurses, the court instead relied on North Carolina's rule of evidence governing expert testimony. *Id.* (citing N.C. GEN. STAT. § 8C-702). Pursuant to that rule, the court found that the expert nurse, "through both study and experience, was better qualified than the jury to form an

14

opinion on the cause of [the victim's] death." *Id.* In fact, the expert's status as a nurse "was merely a factor to be considered by the jury in evaluating the weight and credibility of her testimony." *Id.*

The Supreme Court in Oklahoma held that nurses are qualified to discuss the causation and treatment of pressure ulcers specifically. *Gaines v. Comanche County Med. Hosp.*, 2006 OK 39, 143 P.3d 203, 207. The court agreed with the Kansas Court of Appeals that "such skin eruptions are 'primarily a nursing problem.'" *Id.* (quoting *Mellies v. Nat'l Heritage, Inc.*, 6 Kan. App. 2d 910, 918, 636 P.2d 215 (1981)). In fact, the court noted from its research that every other jurisdiction permitted causation testimony from nurses in cases involving pressure ulcers specifically. *Id.* Further, the court found that such testimony was consistent with Oklahoma's rule of evidence providing for expert testimony. *Id.* at 207-08 (quoting Okla. Stat. tit. 12, § 2702, which qualifies witnesses as experts based on "knowledge, skill, experience, training or education").

And in Pennsylvania, the Supreme Court reversed prior precedent that prohibited nurses from offering opinion testimony on medical causation. *Freed v. Geisinger Med. Ctr.*, 601 Pa. 233, 253, 971 A.2d 1202 (2009). In language similar to the Mississippi law in *Vaughn*, Pennsylvania's professional nursing law allowed nurses to diagnose human responses to actual or potential health problems but expressly prohibited them from providing medical diagnoses. *Id.* at 246 (citing 63

PA. CONS. STAT. § 212(1)). Reversing a prior opinion to the contrary, the court in *Freed* found "no language whatsoever in the [professional nursing law] statute to suggest that the principles governing the actual *practice* of nursing are applicable in the distinct *legal arena* of malpractice or negligence actions, which is governed by the Rules of Evidence." *Id.* at 247. Instead, the court held that the nursing statute did not override "the well established liberal standard for qualification of expert witness testimony." *Id.*

As mentioned above, these cases follow the majority rule throughout the country that nurses may be qualified to testify as experts pursuant to the rules of evidence. *See, e.g.*, *Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 785, 25 P.3d 88 (2001) (holding that sufficiency of testimony in a medical malpractice case is governed by ER 701 and ER 702); *Mellies*, 6 Kan. App. 2d at 920 (holding that "if a proper foundation is laid as to the nurse's experience with decubitus ulcers, she or he can qualify as an expert as to causation and as to such parts of treatment and cure that are performed by such nurse"); *Williams v. Eighth Judicial Dist. Ct.*, 127 Nev. 518, 526, 262 P.3d 360 (2011) (holding that nurses are not per se precluded from testifying as to medical causation); *Salter v. Deaconess Family Med. Ctr.*, 267 A.D.2d 976, 976, 701 N.Y.S.2d 586 (App. Div. 1999) (finding that testimony of defendant nurse admitting element of proximate cause established a prima facie case of malpractice).

We agree with Frausto and hold that ER 702 provides the appropriate mechanism for a trial court to determine whether an ARNP's opinion on causation is sufficient based on the qualifications of the ARNP and the statutory scope of that ARNP's authority and certification as a health care provider. Even among the cases cited by Yakima HMA, the courts analyzed the issue of causation using the language of expert testimony admissibility. *See Long*, 699 N.E.2d at 1168 (noting that a witness without the "'same education, training or experience'" as the defendant is "generally *not qualified* to serve as an expert" (emphasis added) (quoting *Stackhouse v. Scanlon*, 576 N.E.2d 635, 639 (Ind. Ct. App. 1991))); *Vaughn*, 20 So. 3d at 652 (finding that nurses "are not *qualified* to make medical diagnoses or attest to the causes of illnesses" (emphasis added)); *Esquivel*, 225 S.W.3d at 91 (finding that the expert nurse's "report and [curriculum vitae] do not establish that she has any *training, education, skill or clinical nursing experience* relevant to diagnosing the causes of decubitus ulcers" and that the nurse did not "*possess*[ ] *the expertise* which would *qualify* her to express an opinion as to the causal link" (emphasis added)). In each case, the court's determination on expert qualifications was influenced by that state's nursing statute excluding nurses from diagnosing injuries or illnesses. This is contrary to Yakima HMA's claim that "nurses are not qualified, no matter their education, training, or experience, to

17

present medical causation opinions." Resp't's Br. at 9 (citing *Vaughn*, 20 So. 3d at 652).

Our legislature has outlined the necessary elements of proof to prevail in actions resulting from health care. RCW 7.70.040. Decisions on the qualifications of expert testimony—whether an expert has the proper foundation for their opinions—remains a function of the court. Our Rules of Evidence provide sufficient guidance to trial courts. By preserving the court's gatekeeping function, expert testimony may be excluded when it clearly cannot help the trier of fact determine if the defendant's "failure was a proximate cause of the injury complained of." RCW 7.70.040(2). As amicus Washington State Association for Justice Foundation correctly points out, Yakima HMA is "free to argue [at trial] that Wilkinson's status as a nonphysician permits the jury to afford it less weight, but this status should not, on its own, render her testimony inadmissible." Br. of Amicus Curiae Wash. State Ass'n for Justice Found. at 18-19 (citing *State v. Rangitsch*, 40 Wn. App. 771, 779, 700 P.2d 382 (1985); *In re Welfare of Young*, 24 Wn. App. 392, 397, 600 P.2d 1312 (1979), *review denied*, 93 Wn.2d 1005 (1980)). A sweeping ban on causation testimony from expert ARNPs is unnecessary and inconsistent with the degree of independent care authority granted to those holding an ARNP license in Washington State.

Finally, Yakima HMA points out that Frausto's expert ARNP in this case specialized in pediatric care and argues that such experience does not qualify her to opine as to the cause of bedsores in adult quadriplegic patients. This may or may not be so, but it is an evidentiary determination to be made by the trial court. Despite observing that Ms. Wilkinson is "extremely well qualified," has "been teaching all over the place," and has "been a nurse for a long time," it is clear that the court did not make a finding as to Ms. Wilkinson's qualifications under ER 702. VTP at 33. As such, the trial court should have an opportunity to hear the parties' arguments on this point and exercise its discretion accordingly.

CONCLUSION

The trial court entered summary judgment on the basis that nurses are categorically prohibited as a matter of law from offering opinion testimony regarding proximate cause in a medical malpractice claim. However, our state's statutory rules permit ARNPs to independently diagnose some conditions within the scope of their certification. Whether or not an ARNP has the requisite specialized knowledge to qualify as an expert on causation is a determination left to the trial court under our Rules of Evidence, taking into consideration the ARNP's particular scope of practice and expertise. Accordingly, we reverse and remand to the trial court to determine whether Ms. Wilkinson has the requisite

19

qualifications under ER 702 to offer an opinion as to the causation of Frausto's

injuries.

WE CONCUR: